UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In Re:<br><br>Jennifer Keri Stahlberger,<br><br>Debtor. | Case No.: | 20-23388-ABA |
| | Adv. No.: | 20-1627-ABA |
| Jennifer Keri Stahlberger, Plaintiff<br><br>v.<br><br>PF Ellison, Defendant. | Chapter: | 13 |
| | Judge: | Andrew B. Altenburg, Jr. |

**OPINION**

Jennifer Stahlberger, the debtor/plaintiff, seeks to avoid the transfer of her real property to defendant PF Ellison, LLC ("PF Ellison") on the basis that the transfer constituted a preference and/or a constructively fraudulent transfer. Doc. No. 2 ("Amended Complaint"). PF Ellison filed a Motion to Dismiss (Doc. No. 4) arguing that the date of the transfer of the property relates back to the date a *lis pendens* - making the transfer more than two years prior to Ms. Stahlberger's filing of bankruptcy and as such, the Amended Complaint fails to state a claim upon which relief can be granted. Ms. Stahlberger opposes (Doc. No. 6). Both parties having briefed the issues, and a hearing held on February 9, 2021, the matter is ripe for adjudication.

Because the court finds that the date of the transfer of the property relates back to the date a *lis pendens* was filed, thus making the transfer more than two years prior to the filing of the bankruptcy, neither the preference or fraudulent transfer claims can succeed and consequently, the Amended Complaint must be dismissed

**JURISDICTION AND VENUE**

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F) and (H), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

The relevant facts do not appear in dispute. PF Ellison recites that Propel Funding Multi State, LLC ("Propel Funding") purchased a tax sale certificate (a "TSC") from the Tax Collector for the Township of Upper Deerfield. Doc. No. 4, p. 1, ¶ 4. The Certificate of Sale and the Recording Information Sheet show that Propel purchased the TSC on July 8, 2016 and recorded it on May 9, 2017. Doc. Nos. 4-2, pp. 2-3. After several assignments of that TSC, on October 16, 2018, the then-current assignee Caz Creek NJ II, LLC filed a tax foreclosure action against Ms. Stahlberger in the Superior Court of New Jersey, Cumberland County and on October 23, 2018 recorded a *lis pendens*. Doc. No. 4-1, ¶¶ 4-5 (certification); *see* Doc. No. 4-4, p. 4 (*lis pendens*). On October 30, 2018, it served the summons and complaint on Ms. Stahlberger. Doc. No. 4-5 (Affidavit of Service of Summons and Complaint). On July 24, 2020, the TSC was assigned to PF Ellison. *See* Doc. No. 4-9, p. 2. On September 10, 2020, Final Judgment in Foreclosure was entered in favor of PF Ellison, vesting title to the property in PF Ellison. Doc. No. 4-1, p. 3, ¶ 11; *see* Doc. No. 4-10, p. 2.

Ms. Stahlberger seeks avoidance of the transfer of her real property located at 227 Silverlake Road, Upper Deerfield, New Jersey, obtained by PF Ellison through a tax foreclosure sale. She alleges that the transfer was to PF Ellison on account of a tax sale certificate purchased in July 2016, while Ms. Stahlberger was insolvent, within 90 days prior to the filing of the bankruptcy case, enabling PF Ellison to acquire more than if the property were liquidated under chapter 7. Doc. No. 2, ¶¶ 4-5. Specifically, regarding value, Ms. Stahlberger alleges that the property is currently listed for sale by PF Ellison for $179,000 but PF Ellison was owed $50,000 or less. *Id.* Accordingly, she argues, the transfer is avoidable as a preference pursuant to 11 U.S.C. § 547.

In a second count, Ms. Stahlberger alleges that she owned the Silverlake property prior to entry of Final Judgment in PF Ellison's favor in September 2020, accordingly "such transfer" was made within two years prior to her filing her chapter 13 bankruptcy case on December 8, 2020. *Id.*, ¶¶ 8-9. She alleges she received no value for the transfer and was insolvent at the time of the transfer. *Id.*, ¶¶ 10-11. Accordingly, the transfer should be avoided as a constructively fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B).

PF Ellison seeks dismissal of both counts, arguing that the date of the transfer of the property relates back to the date its predecessor filed a *lis pendens*, making the transfer more than two years prior to Ms. Stahlberger's filing of bankruptcy, thus neither the preference or fraudulent transfer claims can succeed. PF Ellison asserts that the Amended Complaint therefore should be dismissed as failing to state a claim upon which relief can be granted. It alternatively asserts that the Amended Complaint should be dismissed as having been filed in bad faith, citing 11 U.S.C. § 1307(c).

## DISCUSSION

A Rule 12(b)(6) motion to dismiss for failure to state a claim is made applicable in an adversary proceeding pursuant to Bankruptcy Rule 7012. Fed. R. Bankr. P. 7012; Fed. R. Civ. P. 12(b)(6). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009).

As the only disputed element pertains when the transfer was made, the court will address both the preference and the fraudulent transfer counts together. Pursuant to section 547,

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may . . . avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
> (A) **on or within 90 days before the date of the filing of the petition**; . . . and
> (5) that enables such creditor to receive more than such creditor would receive if—
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (emphasis added).

Section 548 provides regarding fraudulent transfers, in pertinent part:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, . . . that was made . . . **on or within 2 years before the date of the filing of the petition**, if the debtor voluntarily or involuntarily— . . .
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation[.]

11 U.S.C.A. § 548(a)(1)(B) (emphasis added).[1]

Section 547 provides that when a transfer is made depends upon when the transfer was perfected:

- if perfected at or within 30 days after the transfer, then the transfer is deemed made at the time the transfer takes effect (11 U.S.C. § 547(e)(2)(A));
- if the transfer is perfected after 30 days, then the transfer is deemed made at the time of that perfection (11 U.S.C. § 547(e)(2)(B)); and
- if the transfer is not perfected at the later of the commencement of the case or 30 days after the transfer takes effect between the transferor and the transferee, then the transfer is deemed made immediately before the date of the filing of the petition (11 U.S.C. § 547(e)(2)(C)).

A transfer of real property is perfected "when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(A).

Section 548 similarly provides:

For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.

11 U.S.C.A. § 548(d)(1).

Accordingly, the court looks to when the transfer in this case was perfected under applicable, i.e., New Jersey, law. *See Rzasa-Ormes v. Arturi, D'Argenio, Guaglardi & Meliti, LLP*, ADV. 09-01883 DHS, 2010 WL 4259829, at *6 (Bankr. D.N.J. Oct. 25, 2010) (determining the date of the transfer for preference purposes requires the court to determine when, under state law, another creditor could not obtain a superior lien: "The date when it could not is the date of perfection.") (citing *In re Hagen,* 922 F.2d 742, 746 (11th Cir. 1991)).

PF Ellison argues that its filing of a *lis pendens* perfected its transfer for purposes of section 547 and 548. New Jersey law requires the filing of a *lis pendens* "[i]n every action instituted in any court of this State having civil jurisdiction or in the United States District Court for the District of New Jersey, the object of which is to enforce a lien upon real estate or to affect the title to real

---

[1] As chapter 13 debtor, not a trustee, Ms. Stahlberger yet has standing to seek avoidance here because "'(1) the transfer was not voluntary; (2) the transfer was not concealed; (3) the trustee did not attempt to avoid the transfer; (4) [she] seeks the avoidance pursuant to §§ 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code; and (5) the transferred property is of a kind that [she] would have been able to exempt from the estate if the trustee had avoided the transfer under one of the provisions in § 522(g).'" *Matter of Varquez*, 502 B.R. 186, 190 (Bankr. D.N.J. 2013) (quoting *In re Dickson,* 655 F.3d 585, 592 (6th Cir.2011)).

estate or a lien or encumbrance thereon[.]" N.J.S.A. 2A:15-6. If the action "to enforce or declare rights in, or concerning, or for partition of real estate . . . arises out of a written instrument, which instrument either is executed by defendant and identifies such real estate or appears of record with respect to the title thereto," then the plaintiff need only file the *lis pendens*. N.J.S.A. 2A:15-7(a). For all other actions

> the plaintiff shall, within three days after the filing of the notice of lis pendens, serve upon the defendant a copy of the notice of lis pendens and of the complaint. Any party claiming an interest in the real estate affected by the notice of lis pendens may, at any time thereafter, file with the court, in accordance with the Rules Governing the Courts of the State of New Jersey, except as otherwise provided herein, a motion for a determination as to whether there is a probability that final judgment will be entered in favor of the plaintiff sufficient to justify the filing or continuation of the notice of lis pendens. The plaintiff shall bear the burden of establishing such probability. The court shall, after hearing and within 10 days, enter a determination as to whether there is a sufficient probability that final judgment will be entered in favor of the plaintiff. If the court determines that there is a sufficient probability of final judgment in favor of the plaintiff, the notice of lis pendens shall be continued of record and shall have the same effect as provided in subsection a. If the court fails so to determine, the court shall forthwith order the notice of lis pendens discharged of record.

N.J.S.A. 2A:15-7(b). *See Spyco, Inc. v. Demenus*, 226 N.J. Super. 482, 485 (Ch. Div. 1988) (generally comparing the subsections).

Ms. Stahlberger argues that the court should not entertain any arguments relating to the *lis pendens* because subsection (b), not (a), of N.J.S.A. 2A:15-7 applies here, requiring that the plaintiff serve the *lis pendens* on her, which PF Ellison did not. She argues that subsection (b) applies to tax foreclosure actions while subsection (a) pertains to written instruments, and that because the predecessor did not serve the upon her a copy of the notice of *lis pendens* and of the complaint, the *lis pendens* should be voided owing to the violation of her due process rights. PF Ellison responds that subsection (a) applies because the tax foreclosure action was an action to enforce or declare rights in the property. Neither goes far enough in their arguments.

There are several parts to application of N.J.S.A. 2A:15-7(a): (1) the action must be "to enforce or declare rights in, or concerning, or for partition[,] of real estate," (2) the claim must "arise[] out of a written instrument," and (3) the instrument must either be "executed by [the] defendant and identif[y] such real estate or appear[] of record with respect to the title thereto." N.J.S.A. 2A:15-7(a).

Certainly, a tax foreclosure action seeks to enforce or declare rights in real estate as it seeks to transfer title to the TSC owner. Because Propel Funding recorded the TSC, by statute it appeared of record with respect to the title of Ms. Stahlberger's real property. N.J.S.A. 54:5-50 ("[t]he register or county clerk . . . shall index the certificate in his index of mortgages in the name of the delinquent owner, as set forth in the certificate, and shall also index it in a separate block index, to

be kept in his office, under the block and lot number as shown in the certificate, if the property is described by lot and block.").[2]

That leaves whether the recorded TSC constitutes a written instrument for purposes of subsection (a). The court could find no reported decisions discussing whether a recorded TSC is a "written instrument" for purposes of subsection (a). Decisions discussing the application of subsection (b) include where plaintiffs attacked the validity of two mortgages, as opposed to enforcing their terms, and the New Jersey Superior Court held that the action did not arise out of a written instrument, and therefore subsection (b) applied, requiring service of the notice on the defendant. *Spyco, Inc. v. Demenus*, 226 N.J. Super. 482, 485 (Ch. Div. 1988). In another case, where a 50% owner of an LLC sued the other half owner for contracting to sell property owned by the LLC, which property the defendant then sold after the complaint and *lis pendens* were filed, the Superior Court affirmed the trial court's conclusion that the plaintiff's claim did not flow from a written instrument, as the only remedy could be money damages for the sale since the court found that the half owner had the capacity to bind the LLC. *Teitlebaum v. Halleck St. Properties, LLC*, A-6383-03T1, 2005 WL 4022328 (N.J. Super. Ct. App. Div. May 22, 2006). Finally, where plaintiffs sued defendants alleging unconscionability, fraud or a breach of fiduciary duty in connection with a refinancing of the plaintiffs' obligation to the defendants, with the *lis pendens* affecting title to properties that the plaintiffs transferred to the defendants as part of the transaction, the Superior Court analyzed the probability of success as required by subsection (b) of N.J.S.A. 2A:15-7. *Fravega v. Sec. Sav. & Loan Ass'n*, 192 N.J. Super. 213 (Ch. Div. 1983).

On the other hand, where Piper Co. recorded a letter between it and Hilton Hotels wherein Hilton agreed to give Piper prior notice of an intent to sell certain property, Hilton sued Piper to determine the respective rights under the letter, and Piper filed an answer, counterclaim and *lis pendens*, the Superior Court held that subsection (a) of N.J.S.A. 2A:15-7 applied to whether the *lis pendens* should be discharged. *Hilton Hotels Corp. v. Piper Co.*, 214 N.J. Super. 328, 332 (Ch. Div. 1986). "Given the fact that the letter in question identifies the premises, is signed by the party seeking to be charged and was recorded, there is little doubt that the applicable portion of the statute is section 'a.'" *Hilton Hotels Corp. v. Piper Co.*, 214 N.J. Super. 328, 332–33 (Ch. Div. 1986).

*Black's* defines "instrument" as a "written legal document that defines rights, duties, entitlements, or liabilities, such as a contract, will, promissory note, or share certificate." *Black's Law Dictionary* (ed. Garner, 7th ed.). As a TSC is a legal document evidencing the transfer of the legal right to collect the unpaid taxes of a certain property owner, this court holds it to be a written document for purposes of N.J.S.A. 2A:15-7(a). *Compare Hilton Hotels Corp.*, at 370-71 (stating that subsection (b) "anticipates settings in which there is no writing but where a *lis pendens* has been filed as part of a claim purporting to affect real estate."). PF Ellison's complaint sought to

---

[2] While recording of a TSC is not mandatory, N.J.S.A. 54:5-50 ("The purchaser *may* record the certificate of sale. . ."), failure to do so within three months of its sale results in it being "void as against a bona fide purchaser, lessee or mortgagee whose deed, lease or mortgage is recorded before the recording of the certificate." N.J.S.A. 54:5-51 (emphasis supplied). N.J.S.A. 54:5-51 further provides that "After recording the tax sale certificate, the lien holder shall deliver a copy of the recorded certificate showing the book, page, date, and cost of recording to the tax collector. The tax collector shall maintain the information as a permanent record." *Id.*

foreclose on the equity of redemption of the TSC, not something ancillary to a TSC, thus the action arose out of the written document.[3]

Thus subsection (a), not (b), of N.J.S.A. 2A:15-7, applies, meaning the *lis pendens* did not have to be served upon Ms. Stahlberger. *See Fravega v. Sec. Sav. & Loan Ass'n*, 192 N.J. Super. 213, 217 (Ch. Div. 1983) ("[I]f plaintiff's claim arises out of a written instrument which appears of record or one which was executed by the defendant and identifies the real estate, there are no procedural changes and anyone seeking a discharge is left to the same remedies as had previously existed; that is, awaiting a decision on the merits or moving for a determination that the action is one for damages only.") (footnote omitted).

As to the effect of the *lis pendens*, New Jersey law provides that

> from and after the filing of a notice of lis pendens, any person claiming title to, interest in or lien upon the real estate described in the notice through any defendant in the action as to which the notice is filed shall be deemed to have acquired the same with knowledge of the pendency of the action, and shall be bound by any judgment entered therein, as though he had been made a party thereto and duly served with process therein.

N.J.S.A. 2A:15-7(a). *See Teitlebaum v. Halleck St. Properties, LLC*, A-6383-03T1, 2005 WL 4022328, at *4 (N.J. Super. Ct. App. Div. May 22, 2006) ("And the purpose of that statute under the common law doctrine of *lis pendens*, when the property was the subject of litigation, is so neither party to the suit could convey the property and adversely affect rights of the other party.").

N.J.S.A. 2A:15-7(a)'s provision satisfies sections 547(e)(1) and 548(d)(1)'s definitions of perfection: that a bona fide purchaser cannot acquire an interest that is superior to the interest of

---

[3] Other statutes appear to provide ample due process protections to the affected property owner such that the service requirement of subsection (b) need not be carried out. *See Spyco, Inc. v. Demenus*, 226 N.J. Super. 482, 486 (Ch. Div. 1988) (N.J.S.A. 2A:15-7(b) enacted to address the due process implications—the "taking of property"—that the filing of a notice of *lis pendens* comprises). "After recording the tax sale certificate, the lien holder shall deliver a copy of the recorded certificate showing the book, page, date, and cost of recording to the tax collector. The tax collector shall maintain the information as a permanent record." N.J.S.A. 54:5-51. County recording officers must index a tax foreclosure complaint "in the name of all persons appearing in the tax foreclosure list and in the complaint in the same index used for notices of *lis pendens*, and the filing of said complaint shall be noted in the margin of the record of each certificate of tax sale referred to in said complaint." N.J.S.A. 54:5-104.44. Finally, "the notice of lis pendens shall, in addition to describing the affected real estate, specify the book and page . . . of the record of the certificate of tax sale. . . . Such notice shall be filed, and the time of its filing and the time of the filing of the complaint with the name of the plaintiff and the first defendant named, shall, in lieu of any other indexing and recording, be noted . . . in the margin of the record of the certificate of tax sale . . . ." N.J.S.A. 2A:15-9. A *lis pendens* not falling under N.J.S.A. 2A:15-9 is recorded by the county clerk or register of deeds and mortgages "in a proper book provided and kept by him in his office," which book "shall be properly indexed, and shall be a public record, to which persons desiring to examine the same shall have access." N.J.S.A. 2A:15-12.

the transferee. Accordingly, here, perfection occurred on October 23, 2018, the date of the filing of the *lis pendens*.

Because section 548(d)(1) provides that a transfer is made when perfected, section 548(a)(1) requiring that a transfer be made or incurred on or within two years prepetition is not met, and Ms. Stahlberger cannot avoid the transfer as a fraudulent transfer.

Section 547(e)(2) assumes that perfection occurred *at or after* the actual transfer. Here, the perfection occurred nearly two years prior to entry of the foreclosure judgment that effected a transfer of the property to PF Ellison.[4]

However, this dilemma is resolved by understanding the doctrine of relation back. It has been long-established that a successful plaintiff's remedy relates back to the filing of a *lis pendens*. The Supreme Court so explained under the common law. *See Connecticut v. Doehr*, 501 U.S. 1, 29 (1991):

> A notice of *lis pendens* is a well-established, traditional remedy whereby a plaintiff (usually a judgment creditor) who brings an action to enforce an interest in property to which the defendant has title gives notice of the pendency of such action to third parties; the notice causes the interest which he establishes, if successful, to relate back to the date of the filing of the *lis pendens*.

*Connecticut v. Doehr*, 501 U.S. at 29 (J. Rehnquist concurrence). *See* Janice G. Levy, *Lis Pendens and Procedural Due Process: a Closer Look After Connecticut v. Doehr*, 51 Md. L. Rev. 1054 (1992), available at: http://digitalcommons.law.umaryland.edu/mlr/vol51/iss4/6 (Doc. No. 9):

> The notice of lis pendens creates a priority in favor of the plaintiff, which, if the plaintiff succeeds on the merits of the claim, relates back to the date of the filing of the complaint (under the common-law doctrine) or the filing of the notice of *lis pendens* (under the general statutory scheme). Thus, although the *lis pendens* does not itself create a lien on the property, it preserves for a successful plaintiff the opportunity to have a lien relating back to the date of the filing of the complaint or the notice.

*Id.*, p. 5 (footnotes omitted).

In New Jersey, the test for whether a matter relates back to the filing of a *lis pendens* was set forth in *Turner v. Houpt,* 53 N.J. Eq. 526, 557 (1895), and repeated by the New Jersey Supreme Court in *Trus Joist Corp. v. Treetop Associates, Inc.*, 97 N.J. 22 (1984). The test asks "[1] Are the parties the same, [2] [is] the property to be affected the same, and [3] [is] the general purpose and subject of the suit the same?'" *Trus Joist*, at 33 (quoting *Turner v. Houpt*, at 557).[5]

---

[4] This also might occur in commercial transactions. *See* N.J.S.A. 12A:9-502(d) ("A financing statement may be filed before a security agreement is made or a security interest otherwise attaches.").

[5] The *Trus Joint* court apparently was not concerned with the fact that *Turner v. Houpt* was subsequently reversed, without opinion beyond "not warranted by the evidence and the law." *See Houpt v. Turner*, 55 N.J. Eq. 593 (1897).

Here, the Silverlake property was the subject of both the *lis pendens* and the tax foreclosure lawsuit, the parties on the *lis pendens* were Ms. Stahlberger in the lawsuit and PF Ellison's predecessor in interest, and the purpose for both was foreclosure of the equity of redemption of the TSC. Accordingly, the transfer relates back to the date of the filing of the notice of *lis pendens*. *See Manzo v. Shawmut Bank, N.A.*, 291 N.J. Super. 194, 207 (App. Div. 1996) (holding that "mortgage granted in settlement of the litigation relates back to the notice of *lis pendens* and takes priority over mortgages granted after the filing of the notice of *lis pendens*"). *Compare Trus Joist Corp. v. Treetop Associates, Inc.*, 97 N.J. at 35-36 (holding that new matters set forth in the amended complaint did not relate back to the *lis pendens*).

Relation back makes the transfer here the same date as the filing of the *lis pendens*, to which section 547(e)(2)(A) applies.[6] *See In re Nealy*, 20-19-33672 (MBK), 2021 WL 115639, at *3 (Bankr. D.N.J. Jan. 7, 2021) (following *Polanco*); *In re Polanco*, 622 B.R. 631, 634 (Bankr. D.N.J. 2020) (holding that debtor could not prevail on preference claim because the transfer related back to the filing of the *lis pendens*); *In re Sandman*, 12-10339-TPA, 2013 WL 3991971, at *4 (Bankr. W.D. Pa. Aug. 1, 2013) (holding that transfer took place when mortgagee filed the *lis pendens*; "The fact that the entry of judgment in the quiet title action and the recordation of the mortgage did not take place until later, during the preference period, is of no moment since, for purposes of a preference action, they merely represent formal confirmation of the existence of the transferred interest and are deemed to relate back to the date of the lis pendens."); *In re Pitchford*, 410 B.R. 416, 421–22 (Bankr. W.D. Pa. 2009) (holding that transfer occurred outside the preference period because ". . . such transfer would, pursuant to 11 U.S.C. § 547(e)(1)(A), have been perfected by Smithfield as of August 15, 2007, when such *lis pendens* was obtained because, by virtue of such *lis pendens,* a bona fide purchaser could not thereafter have obtained an interest in the Debtor's Residence superior to Smithfield's constructive trust in the same.").

Ms. Stahlberger asks this court to follow *In re Hackler & Stelzle-Hackler*, 938 F.3d 473 (3d Cir. 2019), rather than *In re Polanco*. However, whether the filing of a *lis pendens* could take a transfer outside the 90-day preference period was not raised in *Hackler*. The defendant there argued only that a preference could not be avoided due to the Supreme Court's holding in *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994). *In re Hackler*, 571 B.R. 662, 665 (Bankr. D.N.J. 2017) ("Aside from blanket denials in its answer to the complaint, Arianna has not specifically contested any element of § 547(b) in its response to Debtors' Motion for Summary

---

[6] Some courts have conflated relation back of the time of transfer to hold that the filing of the *lis pendens* itself constitutes the transfer. The confusion may stem from courts following the decision in *In re Lane*, 980 F.2d 601 (9th Cir. 1992). While *Lane* properly held that "A judgment affecting possession of property relates to, and receives its priority from, the date the *lis pendens* is recorded," 980 F.2d at 604, it then proceeded to consider whether "The effect of the 'relation back' doctrine on Hurst's claim to be a secured creditor depends on whether a properly recorded *lis pendens* constitutes a 'transfer' under section 547 of the Bankruptcy Code." *Id.* It held that "under California law, the recording of a *lis pendens* constitutes a transfer within the meaning of section 547(e)(1)(A), and, consequently, appellant's interest in the Lanes' property is not avoidable as a preferential transfer." *Id.*, at 602-603. But section 547(e)(1)(A) only provides for when a transfer is perfected; it does not define what is a transfer, found at 11 U.S.C. § 101(54). Notably, *Lane* does not even cite to section 547(e)(2). *But see In re Ute Mesa Lot 1, LLC*, 736 F.3d 947, 952 (10th Cir. 2013) (correctly concluding that "'perfection' and 'transfer' are distinct inquiries for preferential transfer purposes.").

Judgment."), *aff'd,* 588 B.R. 394 (D.N.J. 2018), *aff'd sub nom. In re Hackler & Stelzle-Hackler*, 938 F.3d 473 (3d Cir. 2019). And the Third Circuit rejected that argument, *In re Hackler & Stelzle-Hackler*, 938 F.3d at 480, as well as one based on the Tax Injunction Act. *Id.*, at 481. Thus, the *Hackler* decision provides no basis to change this court's holding.

Thus, for purposes of a preference and fraudulent transfer, both perfection and therefore the transfer occurred on October 23, 2018. As a debtor can only avoid preferential transfers made within 90 days prior to the filing of the petition (or one year if to an insider) and constructively fraudulent ones made within two years prior to the filing of the petition, Ms. Stahlberger cannot avoid the transfer.[7]

## CONCLUSION

Accordingly, an order granting PF Ellison's motion consistent with this opinion has been entered simultaneously herewith.

The court reserves the right to revise its findings of fact and conclusions of law.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: February 10, 2021

---

[7] As the debtor cannot avoid the transfer, the court need not address PF Ellison's bad faith argument. However, it notes that section 1307(c) pertains to conversion to chapter 7 or dismissal of a bankruptcy case, not adversary proceedings, thus it is not properly raised here.